IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| TUCKER, INC., | ) | Case No. 12 - 29222 |
| | ) | |
| Debtor. | ) | Judge Jack B. Schmetterer |

### AGREED FINAL ORDER AUTHORIZING
### LIMITED USE OF CASH COLLATERAL AND
### GRANTING ADEQUATE PROTECTION TO JPMORGAN CHASE BANK, N.A.

This cause coming on to be heard for a hearing upon a continued motion (the "Motion") of Tucker, Inc. ("Debtor"), wherein the debtor and debtor-in-possession in the above-referenced chapter 11 case (the "Case") seeks final authorization under Section 363 of the Bankruptcy Code to use cash collateral, as that term is defined in section 363 of the Bankruptcy Code ("Cash Collateral"), upon which JPMorgan Chase Bank, N.A. (the "Bank") asserts a first priority security interest and lien; and the Court having conducted a preliminary hearing on July 31, 2012 and considered the statements of counsel, and, is seeking certain limited relief on the following terms and conditions, as is necessary and essential to enable the Debtor to continue to operate its business pending an order of confirmation of a Plan of Reorganziation or dismissal or conversion of the case, and the parties having stipulated and agree to a Final Order for the Debtor to use Cash Collateral and grant adequate protection to the Bank, subject to the following terms and conditions contained herein, and good cause appearing therefor,

THE PARTIES STIPULATE AS FOLLOWS:

A.   On July 24, 2012 (the "Petition Date"), Debtor voluntarily filed a petition for relief under Chapter 11, Title 11, of the United States Code (the "Bankruptcy Code"), and has continued as a debtor-in-possession thereafter.

1

B. Prior to the Petition Date, the Bank made certain loans to the Debtor and advanced credit to the Debtor, pursuant to and in accordance with the terms and conditions of (a) a certain U.S. Small Business Adminstration Note, dated as of November 21, 2006, by and between Debtor and the Bank, as thereafter amended from time to time, in the original principal amount of $823,000.00 (hereinafter, the "Note"), and, (b) the indebtedness was modified, renewed, and extended by execution of various change in terms agreements between Debtor and the Bank (the "Modification Agreements"); and (c) the Debtor executed and delivered to the Bank a certain Business Loan Agreement, dated as of November 21, 2006, as amended from time to time; (d) and the Debtor executed a certain Commerical Security Agreement, dated as of November 21, 2006 (the "Security Agreement") and certain other documentation executed in connection therewith prior to the Petition Date; and (e) Donald Strzepek (the "Guarantor") executed a U.S. Small Business Administration Unconditional Guarantee (the "Guaranty"), dated as of November 21, 2006 (the Note, the Modification Agreements, the Security Agreement and the Guaranty are collectively referred to herein as the "Business Loan Documents"); and (f) a certain Subordination Agreement, dated as of November 21, 2006, by and among Gary Fitzenreider ("Fitzenreider"), Tina Fitzenreider ("Tina"), the Debtor and the Bank, under which Fitzenreider and Tina agreed to subordinate all present and future indebtedness to the Bank; and (g) a certain Subordination Agreement, dated as of November 21, 2006, by and between Richard Alcazar ("Alcazar"), Gladys Alcazar ("Gladys"), the Debtor and the Bank, under which Alcazar and Gladys agreed to subordinate all present and future indebtedness to the Bank, and executed in connection therewith prior to the Petition Date (collectively, the "Subordination Agreements" and, together with the Business Loan Documents, the "Loan Documents").

C. The Bank asserts, and the Debtor concedes, that the Debtor was, as of the Petition Date, justly and lawfully indebted to the Bank under the Business Loan Documents in the

2

aggregate principal amount of approximately $553,171.22, together with accrued and unpaid interest and costs and expenses, including, without limitation, attorneys' fees, other professional fees and disbursements (the "Prepetition Indebtedness"). The Bank further asserts and the Debtor further concedes that the Debtor is liable to the Bank for the Prepetition Indebtedness.

D. The Bank asserts and the Debtor concedes that pursuant to (a) the Security Agreement and (b) certain UCC Financial Statements received and recorded by the Illinois Secretary of State on December 20, 2006, and by filing continuations (collectively, the "Security Agreements") Debtor has granted the Bank first priority liens upon and security interests in substantially all assets of the Debtor, and all proceeds and products thereof (collectively, the "Collateral").

E. A need exists for the Debtor to obtain funds and use the Collateral, including Cash Collateral, in order to assure the orderly administration of its estate. Without such funds, the Debtor will be unable to pay insurance, payroll, payroll expenses, rent, utility charges, general overhead and purchase necessary materials. Consequently, without such funds, the Debtor will be unable to operate its business or reorganize its business.

F. Notice of the requested relief has been provided by the Debtor to the Office of the United States Trustee, all of the entities listed pursuant to Fed. R. Bankr. Pro. 1007(d) and the Bank. Given the nature of the relief sought, the Court concludes that sufficient and adequate notice of the requested relief has been given pursuant to Bankruptcy Rules 2002, 4001(b) and (d) and 9014 and Section 102(1) of the Bankruptcy Code as required by Sections 361 and 363 of the Bankruptcy Code, and that no further notice of, or hearing on, the relief sought and the relief granted herein is necessary or required.

G. The Bank has indicated that it is willing to consent to the Debtor's continued use of the Collateral, including the Cash Collateral, solely upon the protections, terms and conditions

provided for in this Order, including the protections afforded a party acting in "good faith" pursuant to Sections 363(m) of the Bankruptcy Code.

H. Consideration of the Motion constitutes a "core-proceeding" as defined in 28 U.S.C. §§ 157(b)(2)(A), (B), (G), (K), (M) and (O). This Order is subject to, and the Bank is entitled to the benefits of, the provisions of Sections 361 and 363(m) of the Bankruptcy Code. This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334.

I. The Court hereby finds that this Order has been negotiated in good faith and at arm's length. Good, adequate and sufficient cause has been shown to justify entry of this Order.

NOW, THEREFORE, UPON THE RECORD BEFORE THIS COURT WITH RESPECT TO THE MOTION, IT IS HEREBY ORDERED THAT:

1. The Court hereby authorizes the Debtor's continued use of the Collateral (including, without limitation, Cash Collateral) beginning with the Petition Date for the disbursements set forth in the budget, which is attached as <u>Exhibit A</u> hereto, as such budget may be modified from time to time by the Debtor with the prior written consent of the Bank (the "Budget"), and for no other purposes. The Debtor shall be authorized to use Cash Collateral exclusively for disbursements to the extent and in the amounts set forth in the Budget. The Debtor may use Cash Collateral in an amount equal to up to 10% more than a particular corresponding "category" in the Budget (e.g., "rent", "phone", "utilities"), measured on a cumulative, monthly basis, provided that Cash Collateral is available.

2. The Debtor shall maintain the existing bank accounts, including accounts maintained by the Debtor with the Bank prior to the Petition Date (collectively, the "Cash Collateral Accounts") into which all proceeds of the sale, collection or disposition of the Collateral and any property of the Debtor that would have constituted the Collateral but for the

operation of Section 552(a) of the Bankruptcy Code, including accounts receivable now existing or hereinafter arising, shall be immediately deposited. The Debtor agrees that it will not (without the Bank's prior written consent) close any of the Cash Collateral Accounts or establish any new bank accounts. The Debtor shall provide to the Bank a written report of the cash balances in all of its bank accounts as of the close of business on every other Friday until Confirmation of a Plan, within five (5) business days thereafter. Subject to the terms and conditions of this Order, the Debtor shall be permitted to withdraw funds from the Cash Collateral Accounts to make disbursements provided for in the Budget or provided for or permitted by this Order with respect to a Non-Conforming Use.

3. In addition to the Bank's security interests, liens, rights and other interests in and with respect to the Collateral, as adequate protection for and to secure the payment of an amount in the value of the Collateral and to induce the Bank to permit the Debtor to use the Collateral (including, without limitation, Cash Collateral as provided in this Order), the Debtor hereby grants to the Bank a security interest in and lien without further act, notice, or deed, a post-petition, continuing replacement lien and security interest in and to the same type of property and to the same extent in which the Bank had a security interest as of the Petition Date and all other of the now owned and hereafter-acquired real and personal property, assets and rights of the Debtor, of any kind or nature, wherever located, and the proceeds, products, rents and profits thereof (collectively, the "Post-Petition Collateral").

4. As further adequate protection for the use of the Collateral (including, without limitation, Cash Collateral), the Debtor shall pay to the Bank the sum of Five Thousand Dollars and No Cents ($5,000.00) per month on the Note, due and payable on the 26th day of each month, as and for adequate protection, until an Order confirming a Plan of Reorganization is entered, or the case is converted or dismissed. Notwithstanding anything herein to the contrary,

all such payments which includes interest to the Bank, shall be without prejudice to the rights of any party in interest to subsequently seek a determination from the Court as to whether the Bank is undersecured as of the Petition Date.

5. As further adequate protection for the use of the Collateral (including, without limitation, Cash Collateral), the Debtor shall maintain at all times a policy of casualty insurance in effect on all of the Bank's collateral for an amount at least equal to the Pre-Petition Indebtedness, naming the Bank as an additional loss payee.

6. The Debtor shall continue to provide the Bank with all financial information as required in the Loan Documents. The Debtor agrees to furnish to the Bank: (a) monthly reports of cash receipts and disbursements, including a reconciliation, showing any variances to the Budget and any Non-Conforming Use (the "Budget Reconciliation"), (b) monthly accounts receivable aging reports (the "Accounts Receivable Aging"), and (c) monthly inventory reports. The Budget Reconciliation shall be provided to the Bank so as actually to be received by the Bank within ten (10) business days following the end of each monthly period. The accounts receivable aging report and the inventory report shall be provided to the Bank so as actually to be received by the Bank within ten (10) business days following the end of each month. In addition, the Debtor shall provide to the Bank with such other reports and information as the Bank may reasonably request. The Bank shall have the right, upon 24 hours' prior notice, during ordinary business hours, to inspect and copy the Debtor's books and records.

7. The Debtor's use of Collateral shall expire in the event of (a) the Debtor's failure to make regular, monthly payments to the Bank for adequate protection described in paragraph 4; (b) the dismissal of any of the Case or the conversion of any of the Case to case under Chapter 7 of the Bankruptcy Code; (c) the failure of the Debtor to adhere to the Budget (either with respect to receipt or disbursements) in any material respect except with respect to a "Non-

Conforming Use" provided such Non-Conforming Use is undertaken in accordance with the terms of this Order. On or after the occurrence of any of the above, the Debtor shall cease using Cash Collateral on the third business day after the date on which the Debtor receives notice that such an event has not been cured.

8. Nothing contained in this Order shall be deemed to terminate, modify or release any obligations of the non-Debtor Guarantor to the Bank, with respect to monies owed by the Debtor to Bank.

9. This Order constitutes a Final Order pursuant to Rule 4001(b) of the Federal Rules of Bankruptcy Procedure. This Agreed Order terminates upon the entry of an Order confirming a Plan of Reorganization, or the case is converted to Chapter 7 or dismissed.

**Agreed to by:**

Tucker, Inc.                      JPMorgan Chase Bank, N.A.

By: /s/ Joseph Cohen           By: /s/ Lauren Newman
Joseph Cohen, Counsel for the Debtor     Lauren Newman, Counsel for the Creditor

Dated: May 10, 2013

_____
United States Bankruptcy Judge

*TUCKER, INC.*
FORECASTED STATEMENT OF INCOME AND EXPENSES

|  | MAY 2013 |  |
|---|---|---|
| SALES | 73,000 |  |
| COST OF SALES | 43,800 | (estimated 60%) |
| GROSS PROFIT | 29,200 |  |
| OPERATING EXPENSES |  |  |
| Salaries Net | 9,543 |  |
| Payroll Taxes | 5,313 |  |
| Advertising | 65 |  |
| Professional Fees | 500 |  |
| Credit card fees | 450 |  |
| Freight | 250 |  |
| Insurance | 1,405 |  |
| Miscellaneous - Legal Fees |  |  |
| Office expense and supplies | 300 |  |
| Postage | 100 |  |
| Rent | 3,900 |  |
| Store supplies | 100 |  |
| Telephone & Internet | 360 |  |
| JP Morgan Chase - Loan Payment | 5,000 |  |
| TOTAL OPERATING EXPENSES | 27,285 |  |
| NET INCOME | 1,915 |  |

**TUCKER, INC.**
FORECASTED STATEMENT OF INCOME AND EXPENSES

|  | JUNE 2013 |  |
|---|---|---|
| SALES | 69,000 | |
| COST OF SALES | 41,400 | (estimated 60%) |
| GROSS PROFIT | 27,600 | |
| OPERATING EXPENSES | | |
| Salaries Net | 7,634 | |
| Payroll Taxes | 4,250 | |
| Advertising | 940 | |
| Professional Fees | 500 | |
| Credit card fees | 450 | |
| Freight | 250 | |
| Insurance | 1,650 | |
| Miscellaneous - Sentry Security | 461 | |
| Office expense and supplies | 300 | |
| Postage | 100 | |
| Rent | 3,900 | |
| Store supplies | 100 | |
| Telephone & Internet | 360 | |
| JP Morgan Chase - Loan Payment | 5,000 | |
| TOTAL OPERATING EXPENSES | 25,896 | |
| NET INCOME | 1,704 | |